FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 30, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARCUS "MIKE" HARRIS, and BETTY J. "BETS" HARRIS, husband and wife,

Plaintiffs,

v.

CHELAN COUNTY SHERIFF'S DEPARTMENT, A DIVISION OF CHELAN COUNTY, A MUNICIPAL ENTITY EXISTING UNDER THE LAWS OF THE STATE OF WASHINGTON,

Defendant.

No. 2:17-CV-0137-JTR

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are the parties' cross motions for summary judgment. ECF Nos. 52 & 60. Scott M. Kane represents Plaintiffs Marcus "Mike" Harris ("Harris") and Betty J. "Bets" Harris; the Chelan County Sheriff's Department ("Defendant") is represented by Heather C. Yakely. The parties have consented to proceed before a magistrate judge. ECF No. 9. The Court has reviewed the motions, responses and reply briefs and is fully informed.

## BACKGROUND

Plaintiffs filed a complaint on April 11, 2017, asserting federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over pendent state law claims pursuant to 28 U.S.C. § 1367. Plaintiffs raise causes of action for (1) wrongful termination in violation of substantive and procedural due process rights; (2) wrongful termination and retaliation in violation of 42 U.S.C. §

ORDER . . . - 1

1983; (3) violation of public policy; (4) wrongful termination without cause; (5) wrongful termination in violation of Washington State public policy; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; (8) retaliation against a whistle blower in violation of Wash. Rev. Code 42.40.050; (9) defamation and libel; and (10) loss of consortium. ECF No. 1 at 30-34.

The parties have filed cross motions for summary judgment addressing all causes of action in this case, ECF Nos. 52 & 60; however, the Court herein focuses on Plaintiffs' federal claims as they provide the basis for the Court's jurisdiction.

**FACTS**

Harris was hired by the Chelan County Sheriff's Department on March 15, 1995. In July 2012, Harris advanced to the Chief of Patrol. Corparal John Wisemore ("Wisemore") was the Undersheriff at the time Harris was appointed by Sheriff Brian Burnett as Chief of Patrol. Harris' duties as Chief of Patrol included overseeing the Armory of the Sheriff's Office.

On or about August 2013, Harris investigated a missing Colt M16 rifle the County had purchased from the Army. In 2011, Wisemore had signed documents indicating the rifle was in the Armory, but Range Masters were not able to locate the rifle. It was thought the rifle had been destroyed; however, Harris informed Army representatives there was no supporting documentation to affirm the rifle had been destroyed. On or about January of 2014, Harris completed a report regarding the rifle and designated the rifle as missing/stolen.

Harris has been a drug recognition expert and instructor since approximately 1998 or 1999. Harris also has a personal business (Bosco Training) in which he used his drug recognition expertise to teach classes outside of the Sheriff's Office. On or about February 5, 2014, Harris requested new drugs be supplied by the Sheriff's Office for his use in teaching a drug class. No drugs could be checked out from the evidence room for private business purposes; only for official

ORDER . . . - 2

Sheriff's Office business. Wisemore began an investigation regarding Harris' intended use of the drugs.

On February 18, 2014, Harris met with Sheriff Burnett and Wisemore at which time Harris was informed it was believed Harris had lied in his emails about utilization of Sheriff's Office drugs for his private business. Harris was notified that "over the next week we are going to explore options for your current situation, which are . . . demotion by the Sheriff from Chief of Patrol to the position of Sergeant, or accept a voluntary request by yourself to be reassigned to the position of Sergeant." On February 26, 2014, Harris formally resigned as Chief of Patrol, effective March 1, 2014. Because Harris resigned, no Internal Affairs (IA) investigation was performed. Nevertheless, Harris was placed on the "*Brady*" list[1] by Chelan County prosecuting attorney Doug Shae as a result of the February 2014 allegations. The *Brady* designation of Harris was later exposed in the local newspaper.

In November 2014, new accusations pertaining to Harris' truthfulness were introduced. It was alleged Harris violated overtime rules; specifically, a Chelan County Sherriff's Office Policy requiring eight hours of rest between shifts. Chief Dave Helvey commenced a formal IA investigation. On or about January 2015, Harris was placed on administrative leave. A *Loudermill* Hearing[2] was conducted in February 2015. On or about March 20, 2015, a second hearing was

---

[1] "*Brady*" refers to the United States Supreme Court case *Brady v. Maryland*, 373 U.S. 83 (1963), which requires prosecutors to disclose constitutionally relevant defense evidence, including possible exculpatory evidence or evidence about the credibility of a police officer expected to testify (i.e., "*Brady* Material").

[2] A *Loudermill* hearing is part of the required process that must be provided to public employees prior to removing or impacting their employment rights. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (finding due

ORDER . . . - 3

held. It was determined Harris violated policies of the Chelan County Sherriff's Office, and, on March 31, 2015, Harris was terminated.

In February 2016, an arbitration hearing was held to determine whether just cause existed for Harris' termination from employment with the Chelan County Sherriff's Department. An arbitrator determined there was no cause for Harris' termination and ordered Harris be reinstated to work. Harris returned to work on June 1, 2016, approximately 14 months following his termination.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) states a party is entitled to summary judgment in its favor if "the movant shows that there is no genuine dispute as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249 (1986). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

Once the moving party has carried the burden under Rule 56, the party opposing the motion must do more than simply show there is "some metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion must present facts in evidentiary form and cannot rest merely on the pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine issues are not raised by mere conclusory or speculative allegations. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). The Court will examine the direct and circumstantial proof offered by the non-moving party and the permissible inferences which may

---

process requires that an employee facing termination receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.").

ORDER . . . - 4

be drawn from such evidence. A party cannot defeat a summary judgment motion by drawing strength from the weakness of the other party's argument or by showing "that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*., 809 F.2d 626, 630 (9th Cir. 1987); *see also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216 (9th Cir. 1995).

The Supreme Court has ruled that FED. R. CIV. P. 56(c) requires entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. Therefore, the question on summary judgment is "whether the evidence is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251-252. Where there is no evidence on which a jury could reasonably find for the non-moving party, summary judgment is appropriate. *Id.* at 252.

## DISCUSSION

### I.      42 U.S.C. § 1983

Plaintiff brings a cause of action under 42 U.S.C. § 1983, alleging he was deprived of his constitutionally protected rights. Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. A Section 1983 plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

In support of their § 1983 claims, it appears Plaintiffs argue that:

(1) With respect to the February 2014 *Brady* listing, Defendant deprived Harris of his procedural and substantive due process rights, ECF No. 56 at 4-13, ECF No. 84 at 3-5; and

(2) Harris' procedural and substantive due process rights were further violated by Defendant during the October 2014 investigation, ECF No. 56 at 13-17.

"The Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir.1993). The Due Process Clause confers both procedural and substantive rights. *Armendariz v. Penman*, 75 F.3d 1311, 1318 (9th Cir. 1996) (en banc).

"The substantive component of the Due Process Clause forbids the government from depriving a person of life, liberty, or property in such a way that . . . interferes with rights implicit in the concept of ordered liberty." *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 996 (9th Cir. 2007), aff'd sub nom. *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008) (citing *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 948 (9th Cir. 2004) (internal quotation marks omitted)). However, "[t]here is no general liberty interest in being free from capricious government action . . . . The federal judiciary is not a good-government watchdog; the Due Process Clause is not the 'Fairness Clause.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 873-874 (9th Cir. 1998). By the terms of the Fourteenth Amendment, a plaintiff must first allege a deprivation of "life, liberty, or property."

ORDER . . . - 6

"[P]rocedural due process claims do not 'deal with the substance of the challenged decisions, but with the process by which they were reached.'" *Stamas v. Cnty. of Madera*, 795 F.Supp.2d 1047, 1077 (E.D. Cal. 2011) (quoting *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1260 (9th Cir. 1994)). To state a claim for procedural due process, a plaintiff must allege: "(1) a liberty or property interest protected by the constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). An essential principle of due process is that a "deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

### A. February 2014 *Brady* Listing

Plaintiffs indicate in their motion that Harris' liberty interest was implicated by his placement on a *Brady* list in February 2014, which effectively called into doubt Harris' honor, honesty and morality. ECF No. 56 at 9-11. Plaintiffs contend that "[s]ubstantive due process was violated via the stigmatizing effect of branding Harris a liar in his profession." ECF No. 84 at 3. Plaintiffs also aver that Harris' procedural due process rights were violated by the manner in which he was named a *Brady* officer: he was provided no notice, representation, hearing or post-determination findings. ECF No. 56 at 12; ECF No. 84 at 3; ECF No. 99 at 4-6.

The significance of a *Brady* designation is acknowledged by the Court. *See e.g. Neri v. Country of Stanislaus Dist. Atty's Office*, 2010 WL 3582575 at *1, n.1 (E.D. Cal. 2010) (Because the veracity of an officer becomes a question, "being *Brady*-listed has a significant negative effect upon a law-enforcement officer's career." (quoting *Walters v. County of Maricopa*, 2006 WL 2456173 at *4 (D. Ariz. 2006)). Defendant does not dispute, ECF No. 60 at 7; ECF No 81 at 12, and the Court agrees, that the Ninth Circuit recognizes a liberty interest is triggered

ORDER . . . - 7

under the circumstances present in this case. *Enquist*, 478 F.3d at 997-998 (holding there is substantive due process protection against government employer actions that foreclose access to a profession).

Nevertheless, the Court holds that Plaintiffs' due process claims pertaining to the *Brady* list designation are barred by the Eleventh Amendment. *See infra*.

State officials sued in their official capacities, state agencies and arms of the state are not persons subject to suit for money damages under Section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment bars suit against the state or its agencies for all types of relief, absent unequivocal consent by the state. *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999); *Savage v. Glendale Union High Sch. Dist. No. 205,* 343 F.3d 1036, 1040 (9th Cir. 2003) ("It is well established that agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court.").

In this case, Chelan County prosecuting attorney Doug Shae was the decisionmaker with respect to whether an officer is placed on the *Brady* list in Chelan County. The Ninth Circuit has held that "[t]he County can be held liable only if the District Attorney acted as a county officer. If the District Attorney was a state officer . . . he is entitled to Eleventh Amendment immunity . . . and the County cannot be held liable for those acts." *Ceballos v. Garcetti*, 361 F.3d 1168, 1182 (9th Cir. 2004), remanded on other grounds by 547 U.S. 410 (2006). The Ninth Circuit has further held that District attorneys are state officers when exercising their prosecutorial functions. *Weiner v. San Diego County*, 210 F.3d 1025, 1031 (9th Cir. 2000). As stated in *Neri v. Cty. of Stanislaus Dist. Attorney's Office*, 2010 WL 3582575 at *6 (E.D. Cal. 2010), evaluating a witness's credibility, determining what constitutes "*Brady* material," and decisions on whether to use a police officer as a witness are prosecutorial functions.
///

ORDER . . . - 8

Pursuant to *Weiner*, district courts within the Ninth Circuit have held that a district attorney's office is a state actor with respect to its procedure for placing police officers on "*Brady* lists." *See Neri*, 2010 WL 3582575 at *8 (absolute immunity applies to a prosecutor's decision to "*Brady* list" an officer); *Walters v. Cty. of Maricopa, Ariz.*, 2006 WL 2456173 at *9 (D. Ariz. 2006) ("The decision to place [the plaintiff] on the *Brady* list and to communicate that decision . . . were acts for which these Defendants have absolute immunity."); *Nazir v. Cty. of Los Angeles*, 2011 WL 819081 at *8 (C.D. Cal. 2011) (holding district attorney's office was a state actor when creating procedure to place police officers on *Brady* lists). This Court joins the reasoning of the Courts in *Neri, Walters*, and *Nazir* in concluding that the action of placing Harris on a *Brady* list by Chelan County prosecuting attorney Doug Shae, on behalf of the Chelan County Prosecuting Attorney's Office, was performed on behalf of the state.

Having determined that the Chelan County Prosecuting Attorney's Office was a state actor, Plaintiffs' substantive and procedural due process claims pertaining to the February 2014 *Brady* list designation of Harris are alleged against the state and are barred by the Eleventh Amendment. *See Romano*, 169 F.3d at 1185; *Weiner*, 210 F.3d at 1031 (holding that since district attorneys are state officers when exercising their prosecutorial function, Section 1983 claims against the county fail because the state is the relevant actor, not the county). Consequently, Defendant is entitled to summary judgment on Plaintiffs' February 2014 *Brady* listing claims, and Plaintiffs' motion for summary judgment on this issue is denied.

    **B.**    **October 2014 Investigation**

        **1.**    **Substantive Due Process**

With respect to the October 2014 Investigation (which ultimately resulted in Harris' termination and return to work via the arbitration process), Plaintiffs assert Harris was not afforded procedural or substantive due process. ECF No. 56 at 13-

15. However, neither the complaint, ECF No. 1, nor Plaintiffs' briefing on the instant cross-motions for summary judgment, specifically state the "liberty interest" that was violated by Defendant regarding the October 2014 investigation. In any event, the Court notes the Ninth Circuit recognizes an "occupational liberty interest." *See Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985 (9th Cir. 2007), aff'd sub nom. *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008). The Court in *Engquist* clarified the limits of such a claim as follows:

> We decline to hold that there is no substantive due process claim for a public employer's violations of occupational liberty. Rather, we limit the claim to extreme cases, such as a "government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure." *Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997). Such a governmental act would threaten the same right as a legislative action that effectively banned a person from a profession, and thus calls for the same level of constitutional protection . . . . such a claim is colorable only in extreme cases.

478 F.3d at 997-998. As the Ninth Circuit stated in *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 925 (9th Cir. 2013), "stigmatizing statements do not deprive a worker of liberty unless they effectively bar [him] from *all* employment in [his] field." (italics in original). "Stigmatizing statements that merely cause reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession do not constitute a deprivation of liberty." *Id.* (internal quotations omitted).

Here, although he did not work as a police officer, Harris maintained employment after his job with the Chelan County Sheriff's Office was terminated. Moreover, there are no facts showing Harris was effectively barred from all employment in law enforcement. Most importantly, Harris has been reinstated with back pay and is currently employed in his former position with the Chelan

County Sheriff's Office. Because Plaintiffs have failed to demonstrate Harris was deprived of his ability to work in law enforcement, the Court grants summary judgment in favor of Defendant on Plaintiffs' substantive due process claim pertaining to the October 2014 investigation; Plaintiffs' motion for summary judgment in this regard is denied.

### 2. Procedural Due Process

Plaintiffs contend Harris was also denied procedural due process with respect to the October 2014 Investigation.

Defendant concedes Harris had a legitimate expectation to employment as a Sergeant, ECF No. 60 at 5, and was entitled to due process prior to the deprivation of that right to employment, ECF No. 60 at 6; ECF No. 81 at 7.

The deprivation of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the state actor fails to provide due process. To determine whether a constitutional violation has occurred, it is necessary to ask what process was provided and whether it was constitutionally adequate. A public employee is entitled to notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his story. *Loudermill*, 470 U.S. at 546.

Here, Harris received notice of the internal investigation and was given an opportunity to respond. He was provided with a *Loudermill* hearing, attended a Step II grievance hearing with his attorney and union representative, and, following his termination, was provided full appeal rights via the arbitration process. Harris was represented by an attorney and his union.

It is apparent from the foregoing facts that Harris received constitutionally adequate due process. The Court finds Plaintiffs' procedural due process claim pertaining to the October 2014 investigation fails as a matter of law.

Consequently, with respect to this issue, Defendant's motion for summary judgment shall be granted and Plaintiffs' motion for summary judgment shall be denied.

## II. State Court Claims and Supplemental Jurisdiction

Having determined above that Defendant is entitled to summary judgment on Plaintiffs' federal claims, Plaintiffs' only remaining claims are claims under Washington State law. This Court had supplemental jurisdiction over these claims, pendant to Plaintiffs' claims under § 1983. *See* 28 U.S.C. § 1367(a). However, if "the district court has dismissed all claims over which it has original jurisdiction," the Court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c); *see Un. Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Given that the Court has resolved all federal claims giving rise to this Court's original jurisdiction in favor of Defendant, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has dismissed all claims over which it has original jurisdiction."). Therefore, the Court dismisses Plaintiffs' state law claims without prejudice for lack of jurisdiction. The state courts are still available to Plaintiffs in which to pursue their state law claims.

## CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 60**, is **GRANTED IN PART.**

///

2. Plaintiffs' Motion for Summary Judgment, **ECF No. 52**, is **DENIED**.

**Plaintiffs' Section 1983 and due process claims against Defendant are DISMISSED WITH PREJUDICE. The Court declines to exercise its supplemental jurisdiction; consequently, Plaintiffs' state law claims are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.**

3. All pending motions, **ECF Nos. 104 & 105**, are **DENIED as moot**.

**IT IS SO ORDERED.** The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiffs and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED April 30, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER . . . - 13